The next case before the Court is Case No. 171665, IXI IP v. Samsung. It is an appeal from a decision of the Patent, Trial, and Appeal Board following a final written decision on an inter partes review. All right, Mr. Thank you, I would not have gotten that quite right, but I appreciate the help. You want five minutes for rebuttal? Yes, okay. Good morning. May it please the Court. I'm Gautam Puttnaik with the law firm at Pepper Hamilton. I'm here on behalf of Appellant IXI, LLC. With me is Brad Lenny from my firm as co-counsel. This appeal narrowly focuses on the disclosure of one reference, Marchand, and what the application of Marchand is to the last limitation of Claim 1 of IXI's patent, the 033 patent at issue. What Prior Art reveals is a factual question, right? That's correct. So we have to find that there's no substantial evidence to support the Board's conclusion that Marchand showed what it showed? That's correct. Specifically, the parties dispute whether Marchand discloses a network configuration where a lookup service is stored on the mobile phone in Marchand's network. Petitioners in the PTAB acknowledge that Marchand does not expressly disclose this configuration, but assert that nevertheless Marchand implicitly discloses it. Do you have any problem with that general legal concept that a Prior Art reference can implicitly disclose something? I think if there's substantial evidence to support it, I would agree with it. I think in this case, you'll see that there's not substantial evidence supporting it, which is where the dispute is. Okay. You spend a lot of time on Figure 4, but you agree that Figure 4 doesn't disclose all aspects of the mobile phone in Marchand, right? I agree it doesn't, but it does, for purposes of the appeal, it shows the material limitations or the aspects of the system. Petitioner and PTAB go through – they get to where they are for implicit disclosure with the use of petitioner's expert trying to backfill this issue and ignoring many disclosures that they rely on and that expressly or contradicted in Marchand itself. Specifically, the LUS is not on the phone in Marchand, and there's indicia of why that's so. The board went so far as to hold that just because it's not expressly prohibited, that means that Marchand implicitly discloses that the LUS can be on the phone. But we hold that that can't be substantial evidence to your point. When reviewing the discrete issues on this appeal, it is important to keep in mind that the numerous and significant differences between today's mobile phones and those that existed in 2001 when the 033 patent was filed, failing to take into account those differences runs the risk of impermissible hindsight bias. I'm next going to turn to what the board actually relied on for its finding of implicit disclosure. There are two basic issues that they did. They adopted petitioner's argument that because Marchand discloses that API is on the phone, that that must mean that the phone has the LUS as that issue. When you look at that disclosure in more detail, you'll see that Marchand itself says that's not the case. Petitioners don't even hedge with this issue. In their briefing at page 10, they state, in Marchand, the API corresponds to a service object stored in the GINI LUS. And as a result, the fact that the API is stored on the cell phone means that a lookup service must be on the cell phone. But if you look at the actual disclosure on Marchand, there's an example where that's just not the case. And we can turn to… But why do you believe there can only be one LUS? Well, that's actually not even material. There is a multiple LUS issue that was raised late in the proceedings. It was in the reply. And what's interesting about that, Your Honor, is that petitioners themselves disclosed that you wouldn't be motivated in this instance to use multiple LUSs. And if you look at Appendix 156, petitioners' experts said that it would be inefficient to use multiple LUSs and you would want to use one. Did your expert ever say that in 2001 it would have been impossible to have multiple LUSs in a system like this? No, and that's because the multiple LUSs weren't disclosed until the reply briefing in the underlying proceeding. There was no opportunity. I'm sorry. Does a local network in Marchand have to have a laptop? It doesn't have to have a laptop. The system is a series of devices. If it doesn't have to have a laptop, wouldn't the LUS be located on the mobile phone? Not necessarily, Your Honor, because… Wouldn't that implicitly say that it could be located on the mobile phone? Well, in the instance where the disclosure in Marchand itself, it depicts a mobile phone coming into the network. And then what happens when it actually invokes the gateway capability to get to the Internet? And that is why in our briefs we talk about two PicoNets, and I can explain that. But it doesn't have to be on the laptop. The instances that are disclosed are on the laptop. It doesn't have to be, but it has to be on the existing PicoNet. So when a mobile phone comes into that PicoNet and there's a slave-master relationship created when the call control is invoked, that's a different PicoNet, which is our point. Your argument is that the phone can't be the slave and the master at the same time. Bluetooth technology says you can't be a master of two different PicoNets at the same time. That's in the Bluetooth specification. What do we make of the fact that you can download an API from the phone? So we can go to that actual instance, Your Honor, in the disclosure. If you're looking at 290, there's an example given at line 24 through 27, where it opens with the service menu on the laptop indicates all services available on the PicoNet. So even in its own description, it tells you the LUS is on the laptop to begin with. And then it talks about the mobile phone sending the API to that laptop that wants to use the call control service. So our whole point with this, Your Honor, is there's an explicit contradiction to their position right in the Marchand itself. You don't have to get to implicit. It says something otherwise. I mean, there's a difference between Marchand saying this is the preferred way to do it and Marchand indicating that you can possibly have an LUS on the cell phone. That's true, Your Honor, but I think where we're focused is because petitioners, for the implicit disclosure aspect of it, if you look at page 10 of Petitioner's Brief, they say the fact that the API is on the phone means that the LUS must be on the phone. And I'm saying the disclosure tells you otherwise. Does it render the network inoperable if the LUS is on the phone? That is our position, Your Honor, because that would be the master to two PicoNets, which is impermissible. But doesn't Marchand say there can be more than one LUS in the network? Yes, Marchand doesn't say that, Your Honor. It says that it can be more than one PicoNet. There's nothing in Marchand that says there can be multiple LUSs. We don't quibble with the fact that the Bluetooth spec says – I'm sorry, the GINI spec acknowledges that there can be multiple LUSs. We do argue that there's nothing in Marchand that addresses or even refers to that in passing, whereas our theory of the two PicoNets, there's a specific reference to scatter nets in Marchand itself, as well as an acknowledgment on 292 at line 17. The mobile phone may connect to multiple independent PicoNets since each PicoNet is limited to eight devices on the network. So whereas there's nothing in here about multiple LUSs, there is multiple PicoNets addressed explicitly. The second grounds that the board uses to find implicit disclosure is, first off, the board doesn't address specifically the language that we just pointed to, showing that the LUS was on the laptop for when the API goes from the mobile phone. The second grounds is the board held that Marchand does not expressly prevent the LUS from being disposed on the mobile phone. Our position is that this can't possibly be the standard for implicit disclosure, that there are many things not expressly prevented in a given reference. I would agree with that general proposition, but there's more to it than that, right? Well, Your Honor, it just talks about different situations where it could have been, and petitioners, they pick up on this to rebut. They say that the passage that I highlighted, you could have had a mere possibility of multiple LUSs. Again, petitioners initially in their petition counseled against using multiple LUSs. They said it should be one, either it's on the phone or the laptop, not both. Secondly, the mere possibility, again, can't reach substantial evidence in a patent disclosure. All right, so their expert said that a person of skill in the art would have considered the call control API to correspond to a genie proxy object, which must be downloaded from the LUS. Correct. And so because Marchand teaches that the call control API is downloaded from the mobile phone, Dr. Kai said the mobile phone must also include an LUS. So we would need to find that that testimony is inaccurate or not credible, right? And that is the instance that I point to on 290, Your Honor, where it specifically says the LUS is on the laptop, where it says the services menu is on the laptop, indicates all services. That's the LUS we're talking about. And then it goes on to talk about how the API is downloaded from the phone. Marchand doesn't say that the laptop is a necessary component of the network. That's correct, Your Honor. Okay, if the laptop isn't in the network, then where is the LUS? The LUS is going to be in whatever device that's in the network that is the master, the one who starts the network. Could it be the phone? If the phone started it, it could be, but if the phone's the only one. But in the instance, this whole Marchand disclosure is about a call control set. If there's only a printer and the phone left in the network, is the LUS located in the phone or the printer? In that instance, it could be on either, but it depends on the Marchand. The focus of it is utilizing the call control center to get to the Internet. So you're enhancing the capabilities of a device. In your instance, the network would be started with the printer that doesn't have access to the Internet directly. It needs the phone to come into its system to be able to do it. So that's the focus of Marchand and what it actually discloses. So you're saying that in that instance, the LUS has to be located in the printer? To start the network, yes. What about the statement on 292? The mobile phone may connect to multiple independent PicoNets since each is limited to eight devices on the network, each PicoNet. What would you make of that? That's our point, Your Honor, that there are multiple PicoNets at issue here. There's the original PicoNet, which has the devices connected, like starting with your printer or the laptop, has devices connected. The point of Marchand is to get to the Internet. How do you get to the Internet? You use a phone that has cellular capability. So the cellular capability is the functionality that the other devices are sharing, and that's what the whole system is meant to do. We're saying there's an original PicoNet, as you said, Your Honor, with the devices that need the service. The phone comes in, provides the service, and then there's another conversation with a separate PicoNet where there's privity between the phone and the device using the call control center. And that's why we argue there's two PicoNets, the original one and then the new one where the call control center is actually invoked and used, which is why you have the discussion of a master-service relationship subsequent to— How would it proceed of looking at the different diagrams here and listening to this argument that you just gave us, determine that the LUS cannot be located on the cell phone? The LUS cannot be located on the cell phone that's being added to the system to provide the call control functionality because the devices are already connected before that happens. There's already some network that's already in place through Bluetooth where devices are connected. So we know from Bluetooth specifications there's already a master-servant relationship among those devices. The phone comes in later to provide this call control functionality, and then we have the new master-servant relationship when it's invoked. Okay. You've got a few minutes left for rebuttal. We'll actually restore up to three minutes. Thank you. Thanks. Good morning, ma'am. Pleased to co-operate with Mike McCain with Fisher & Richardson on behalf of Pelley's. It's kind of refreshing to see Apple and Samsung sitting at the same table. Right. We're on the same side. Absolutely wrong. You can thank me. Well, the issue really is quite narrow on appeal here. There's substantial evidence to support the board's conclusion that the lookup service is on the phone. Of course, it's a classic question of fact. The board reviewed the reference in quite detail, looked at the testimony from both sides on this, and the testimony related to what would one audience in the yard, what would they understand from reading the reference? That was the testimony. And they credited our expert, they discounted their expert, and concluded, yeah, it does disclose to one audience in the yard the lookup is on the phone. I'm trying to picture how this works, right? And so back in 2001, they're talking about you're not home, you've got all this stuff set up on your laptop, you've got this whole system set up and everybody talks to each other. You walk in and boom, your phone's automatically connected and so you can make a call based on the information that's in the laptop. Sounds pretty cool and sounds different than what had been done before. So why isn't that what they were talking about as opposed to having the LUS right on the phone? Well, remember the context here is there's two specific disclosures the board relied on. One was this API download point here, and I think that was the bulk of the discussion we had this morning was on the API download. And the Martian reference is clear that it is the phone that's the master. In fact, the Martian reference never says the laptop's the master. It's the phone that's the master. It's all about the phone this thing. The whole point of Martian is about the phone and how do I share that call service. And it's all done in the context of this genie technology. But I thought you were saying that, no, it's not just all about the phone. The phone is one possible master. Well, no, the phone is the only – in terms of disclosure in Martian, the only disclosure about it is the phone is the master. And sort of the debate we're having is does it have a lookup service. That was really the debate we're having because they rely on Figure 4 that you mentioned. And true, that is true that Figure 4 shows a laptop with a lookup service. But remember, Figure 4, you've got to be careful because Figure 4 shows the call service API on a laptop. But we know that the call service API is on the phone, and it doesn't show the call service API. Yeah, but I hate to call 2001 the old days, but today, two years ago, is the old days. But I don't recall your phone being able to hook up to your general contacts that were on your computer. The experts looked at this, and frankly, the second basis, and maybe the question goes to the second ground the board relied on, which is the specific disclosure in Martian that says when the phone connects to the network, all of the devices publish their services. And the board found our expert referenced that. And our expert said, one of our new students would understand that disclosure to mean that the lookup service is on the phone. And why is that? Because when the phone connects, the phone says, okay, I'm here. I'm going to run this show now. Tell me about what you can offer so I can put in a lookup service. This is what our expert said, and the board credited that. And that's, again, another specific disclosure in Martian. Our expert said, one of our new students would understand that to mean the lookup service is on the phone. This is why they're on the same side. It's all about the phone. Yeah, that's right. That's right. And remember, this is all done in the context of the Gini specification, which was made of record. The board relied on the Gini specification. Again, another piece of substantial evidence to consider here, which says there could be multiple lookup services in the system. So the fact that this figure four shows that one lookup service, I don't think it gets you where you need to go. It gets them where they need to go on this point. The dispute really was, does the phone have a lookup service? And these two specific disclosures in Martian said that they did. And our expert concluded that this API was, in fact, a Gini proxy object. That was a critical point of our expert's testimony. We'll credit it. Because once you conclude that it's a Gini proxy object, you're done. Because everybody agrees that Gini proxy objects come from a lookup service. So you have the API downloaded. And then once you find that it's a Gini proxy object, that's over. We're done here. And the fact is, again and again and again in Martian, they talk about the Gini API. They talk about Gini API. They don't say proxy. That's true. But they say Gini API. What do they mean by that? In the context of Gini technology, of course it's a Gini proxy. And that's what our expert said, and that's what the board credited. So the board didn't rely on Gini as another prior art reference. It just relied on Gini as the background in the art at the time, which would help understand Martian. Correct. And again, it goes to this notion that when one works in the art of looking at this, they're coming with their knowledge, their experience, and their skill. They know about the Bluetooth spec. They know about the Gini spec. And when they read Martian, what are they drawing in their mind? And that's really exactly right. It wasn't a combination with Gini. They just referenced it. One would understand that multiple lookup services could be in the system. Just because Figure 4 shows one on the laptop, that's one embodiment, doesn't mean that you could have multiple, which addresses their sub-PicoNet theory that they have. Is it possible that the control API could be anything other than a Gini proxy object? Our experts said no, based on the disclosure of Martian and what their skill in the art would understand. That is, they take the position that, no, this is just an API. It has nothing to do with Gini. But again, when you go to the specification, and it talks about, again and again, it talks about Gini API. It doesn't use the word proxy in there, but boy, Gini API, we're talking about Gini technology, and we know that we're talking about the proxy, so download it from the lookup service. That's what our experts said. When you talk about the expert, you're talking about Dr. Kiai? Yes, Dr. Kiai. Dr. Kiai. Yeah, Dr. Kiai. He says on 241, he says the most logical place to implant the LUF would have been on the device, the mobile phone. Did the board credit that testimony there and rely on it? Yes, the board in A19, A19, A20 discussed the two technical bases and rely on Dr. Kiai's testimony where he talks about the API download and then talks about when the phone connects to the network, everyone sends in their information. Those two bases are in the board's opinion, and they credit our expert on that. Again, this is a factual dispute, and we could have this discussion about, does it show this? If it was actually said explicitly that the LUS was on the phone, we wouldn't be here. So, yes, there is something that needs the OneBoard and It's Going to be Art needs to interpret, needs to understand based on reading the reference. And the board decided that, yeah, OneBoard and It's Going to be Art would find that, and that's the conclusion. But each Bluetooth device can only be the master of a single network, right? In the Bluetooth environment, there's one master. That is correct. That is correct, which goes to another point that the board said that, well, listen, if you're arguing that the master always has a lookup service, and, well, if that's true, then we know the phone's the master. So the phone's going to have a lookup service. So why do they bother talking about setting up Bluetooth as a master? The phone? No, why does Marchand focus on setting up Bluetooth as a master of individual networks? Well, in the Marchand reference, they make the phone king, if you will. They're explicit about that. In fact, there's no disclosure in Marchand about anything else other than the phone being the master. The phone's the master. And it's just that the link that's being drawn by the experts and their interpretation of OneBoard and It's Going to be Art is the fact that the API is a proxy object, and therefore the lookup service is not the phone. If the phone's the master, that doesn't mean that the LUS can be located on a computer in the network. The phone can still be the master, but yet the LUS is located somewhere else. So is that a possible scenario? Well, yes, I guess that's possible. I mean, that's what Marchand discloses, right? Well, no, Marchand discloses, of course, that the phone's the master, and Figure 4 shows the LUS on the laptop. That's what I said. Marchand discloses that. Marchand does disclose that. Of course, the way that the board included it, it also discloses the lookup service being on the phone. OneBoard and It's Going to be Art would conclude that. That's not explicit. We're not saying that that's explicit in the reference. That's for sure. This is something that the board included based on the competing evidence. And really, this is what the board does best. I mean, this is really what they're interpreting prior art and coming to a conclusion about what it discloses to OneBoard and It's Going to be Art. That's their bailiwick. And this is exactly what they did in this case. It's a very fine, factual dispute. And they had some good arguments, all right? We got some good arguments. The board came down on our side. I'm looking forward to the next time you're appealing from a board decision. Yes, well, I'm going to quote this back to you. But unless there's anything else, that's all I had. Okay, thank you. All right, you have three minutes. Thank you. I didn't answer a question you posed well, and I wanted to revisit it if I could. Okay. The question you asked was whether the phone could be the master of the broader PicoNet. Our position is it cannot. And we briefed it as well. The reason being is because the Marchant Disclosure talks about how once the API is down, the phone comes in and becomes a master of a sub-PicoNet with a device that needs a call control center. So the phone being the master of the broader PicoNet would be contrary to the Bluetooth technology that says you can only be a master of one PicoNet at a time. So that's why the phone could not start as the master of the bigger PicoNet and have the LUS on it. And everyone has agreed that the master of the broader PicoNet will have the LUS. The disagreement is who is the master between counsel, between the parties. So because of that, it's important to remember that you cannot have a master of two different PicoNets. And the disclosure of Marchant is very clear. Even starting at 286, where once the phone functionality is invoked, then just prior to execution of the API, then you start the new conversation between the phone and the device that wants the call control functionality. So there's already a PicoNet in existence. The phone comes in and says someone else wants to use that device.  Counsel also said something about Figure 4 that I wanted to flag. Figure 4, he referenced how the API for the call control center is with the LUS. It's listed in Figure 4. Under the laptop, that's true. The Gini call control API, separate and apart from the LUS. It's not in the LUS. It's separate and apart from it. But that actually makes sense when you look at the whole disclosure. Figure 4, if you go to 287, is actually describing what happens when the laptop wants to make a phone call. That's actually the description of what's going on in Figure 4. So it completely makes sense that the API has been transferred from the phone to the laptop that does have the LUS. It's clear in Figure 4 that the laptop already has the LUS. Then the API comes in because it's using that functionality of the phone. But the mere existence of an LUS on a laptop doesn't alter the ability of the phone to have an LUS, right? It does, Your Honor, when we're talking about the LUS has to be on the master of the network. So again, you can't have two masters. And the disclosure in Marchand talks about how once the API is called and used for the call control, then and only then, after that, the phone becomes the master with that specific device, specifically for the call control functionality. Doesn't Figure 4 show that the computer could be both a master and a slave? The laptop? The laptop. It seems to me you're ascribing some sort of physical functionality to a telephone that may be possessed by the computer, by the laptop. To answer your question, the master and slave situation, it's a temporal aspect of it. We say Figure 4 shows the laptop is the master in the beginning of the PicoNet because it has the LUS. Then the phone, per the description of Figure 4, the laptop wants to use the call control functionality. Once it does that, it invokes against the API, which is shown in 47. So it becomes the master to the slave. To the master phone. Why doesn't that work with the phone? The phone comes in as a master and then the phone becomes the slave. It's responding to the call for services from the computer. Correct, but in Marchand, the only disclosure is because of, I guess, the state of time. The only way to get to the cellular, per Marchand, is through the phone because that's the only connection to the cellular network that the whole point of the call control center. That's what you're trying to do. So the mobile phone is your only gateway. That's why they call it the gateway device because it's your only way to get to the Internet. So it can't be the master of both. It has to be the master of the individual conversation with the device trying to get to the Internet. The last thing I'll say is that we believe that this case is analogous to something recently ruled upon in the Fed Circuit. Specifically, we think this case has analogous facts to DSS Tech versus Apple, which was decided on March 23rd, 2018. There, the court found that the board's analysis was deficient because it found that the knowledge of the skilled artisan could supply a missing feature from the patent claims. We think we have the same situation here. Okay. Thank you.